UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ELIZABETH A. ANDERSON, | ) |
| Plaintiff | ) ) ) |
| vs. | ) CAUSE NO. 3:05-CV-354 RM ) |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | ) ) ) ) |
| Defendant | ) ) |

OPINION AND ORDER

Elizabeth Anderson seeks judicial review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g). For the reasons that follow, the court affirms the Commissioner's decision.

BACKGROUND

Mrs. Anderson asserted in her application for benefits that she has been disabled since April 3, 2000 due to bilateral torn rotator cuffs, fused vertebrae in her lower back, degenerative disc disease of the neck, chronic pain, limited movement, and loss of grip strength. Her application was denied initially, on reconsideration, and following an administrative hearing at which counsel represented her. At that hearing, the administrative law judge heard testimony

from Mrs. Anderson and a vocational expert, Dr. Robert Barkhaus. Applying the standard five-step sequential evaluation in determining disability, *see* 20 C.F.R. § 404.1520, the ALJ found that Mrs. Anderson had severe physical impairments, including bilateral thoracic outlet syndrome, degenerative disc disease of the neck, low back pain status post fusion, and a torn rotator cuff; that none of her impairments, alone or in combination, met or equaled the severity of a listed impairment; and that she retained the residual functional capacity to perform a light and/or limited range of medium exertion work with limitations, and was capable of performing her past relevant work as a receptionist/office manager. The ALJ concluded that Mrs. Anderson wasn't disabled within the meaning of the Social Security Act and wasn't entitled to benefits. When the Appeals Council denied Mrs. Anderson's request for review, the ALJ's decision became the final decision of the Commissioner of Social Security. Fast v. Barnhart, 397 F.468, 470 (7th Cir. 2005). This appeal followed.

Mrs. Anderson challenges the ALJ's assessment of her credibility and residual functional capacity. She contends that the ALJ disregarded or discredited evidence favorable to her claim without articulating or supporting her reasoning –specifically her testimony at the hearing regarding chronic pain and fatigue and the limitations and restrictions it imposes and medical evidence indicating she suffered from fibromyalgia and sleep disturbances. Mrs. Anderson asks the court to reverse the Commissioner's decision and find that she is disabled as a matter of law and entitled to benefits.

2

STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court must affirm the Commissioner's determination if it is supported by substantial evidence, see Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000), which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The substantial evidence analysis prevents the court from "reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility"—in short, substituting its own judgment for that of the Commissioner, Williams v. Apfel, 179 F.3d 1066, 1071-1072 (7th Cir. 1999); accord Powers v. Apfel, 207 F.3d 431, 434-435 (7th Cir. 2000)—but the court will not simply "rubber-stamp the Commissioner's decision without a critical review of the evidence." Clifford v. Apfel, 227 F.3d at 869.

DISCUSSION

The ALJ's assessment of Mrs. Anderson's credibility is entitled to great deference. *See* Herron v. Shalala, 19 F.3d 329, 335 (7th Cir. 1994); Ehrhart v. Secretary of Health and Human Servs., 969 F.2d 534, 541 (7th Cir. 1992); Imani v. Heckler, 797 F.2d 508, 512 (7th Cir. 1986)). The court has greater freedom to reassess credibility determinations when they rest upon "objective factors and fundamental implausibilities," rather than subjective determinations, Herron v. Shalala, 19 F.3d at 335, but the court otherwise will not upset credibility

determinations unless "patently wrong." Luna v. Shalala, 22 F.3d 687, 690 (7th Cir. 1994).

The regulations set forth a two-step analysis of a claimant's subjective complaints. For pain or other symptoms to contribute to a disability finding, an individual must first establish by medical evidence the presence of a medically determinable impairment reasonably expected to produce the pain or other symptoms alleged; once established, allegations about the intensity and persistence of pain or other symptoms must be considered with the medical signs and laboratory findings in evaluating the impairment. *See* 20 C.F.R. § 404.1529. The ALJ must evaluate subjective complaints in light of all the evidence, including such things as the claimant's work history, medical evidence, testimony, demeanor, daily activities, medications, nature and frequency of pain, and other aggravating factors. Id.; S.S.R. 96-7p; *see also* Pope v. Shalala, 998 F.2d 473, 485-486 (7th Cir. 1993).

Mrs. Anderson has several physical impairments, but challenges the ALJ's assessment of only one—fibromyalgia—in her brief in opposition to the Commissioner's decision. She maintains that the medical evidence presented at the hearing established that she has fibromyalgia, and contends that the ALJ ignored that evidence and evidence of sleep disturbances, and incorrectly stated that fibromyalgia is not mentioned by any medical source, not mentioned by plaintiff, and not indicated as being treated.

> [Fibromyalgia's] cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and–the only symptom that discriminates between it and other diseases of a rheumatic character–multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch.

Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996). "Some people may have such a severe case of fibromyalgia as to be totally disabled from working, but most do not and the question is whether [the claimant] is one of the minority." Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir. 1996). The ALJ found that Mrs. Anderson was not. She acknowledged that Mrs. Anderson had reported to physicians that she had been diagnosed with fibromyalgia in the late 1980's, but found that:

> The record does not indicate by whom or on what basis the diagnosis was given. Nor is there any indication of treatment at any time for this condition. In fact, from the alleged onset in April 2000 through this note in June 2002, more than two years, fibromyalgia is not mentioned by any medical source, and not even mentioned by Ms. Anderson.

(A.R. 14). Mrs. Anderson argues that "several physicians confirmed [her] diagnosis of fibromyalgia and indicated treatment through medication." A review of the record, however, shows that virtually all of the references to fibromyalgia in the medical records submitted by Mrs. Anderson's physicians, Drs. Zimmerman, Pritchard, and Hanus, were contained in her self-reported medical history. No objective medical findings actually support a diagnosis of fibromyalgia.

5

Mrs. Anderson submitted additional evidence to the Appeals Council with her request for review of the ALJ's decision, including treatment notes from Dr. Hanus, D.O., for the period from November 6, 2003 through December 2, 2004, and a letter dated December 16, 2004 from Dr. Hanus in which he stated that Mrs. Anderson has fibromyalgia, which was "diagnosed in 1986 after testing ruled out any other possibilities." (A.R. 343). But Dr. Hanus didn't treat Ms. Anderson in 1986, and didn't identify the physician who rendered the diagnosis in 1986, his or her area of expertise, what tests were performed, what results were obtained, or whether any additional testing had been performed since that time.

Mrs. Anderson did not list fibromyalgia as one of the impairments she deemed disabling on her original application for benefits and didn't mention it during her testimony. At the hearing, the ALJ identified what she understood Mrs. Anderson's impairments to be (torn rotator cuffs, low back fusion, lower back and neck pain, depression, and plantar fasciitis resulting in right heel pain) and asked Mrs. Anderson and her attorney if she experienced any other problems. In response, Mrs. Anderson stated, "I don't think so."

Unlike Sarchet, the ALJ's assessment of the evidence relating to fibromyalgia is well-supported and well-reasoned. Her assessment of Mrs. Anderson's credibility is also supported by substantial evidence in the record.

Mrs. Anderson testified at the administrative hearing that the splint that had been prescribed to treat the inflammation of her plantar fascia significantly reduced the amount of pain she experienced, and that she experiences neck pain,

6

but has a full range of motion and uses pain medication only six or seven days a month, which significantly reduces the level of pain. She also stated that torn rotator cuffs cause intermittent pain and problems lifting and reaching with her arms extended or over her head; that she elected not to have further surgery to repair the tears; and that she alleviates the symptoms by avoiding things that cause it to hurt. Mrs. Anderson testified that stooping, bending, and kneeling aggravate her back pain, and that she could lift 20-30 pounds if her arms weren't extended or over her head, could stand for about 20 minutes and walk for up to an hour, and could sit for about 20-30 minutes before she has to get up and stand or walk. But she also stated that she can ride in a car for about an hour without having to stop or change positions, spends "a great deal of time" gardening and visiting her parents, occasionally babysits for her grandchildren, takes day trips with her husband, and assists him with cooking and other household chores. Mrs. Anderson stated that leg pain caused sleep disruption if she didn't take her medications (Darvocet and Elavil) before she went to bed, but that she was able to sleep "most of the time," if she took the medications. When the medications aren't enough to make her fall asleep (about 10 nights a month), she stated that she only gets about four hours of sleep, awakens groggy and tired, and feels like she needs to nap during the day. Mrs. Anderson testified that she probably naps 25 days out of 30 for 15 or 20 minutes. She indicated that she'd been prescribed Elavil, an anti-depressant, about a month before the November 2003 hearing "to help her sleep and for nerve pain," and stated that she thinks she has sleep

7

apnea, but acknowledged that it was a self-diagnosis. When asked if she thought she could return to any of the jobs she'd previously performed, Mrs. Anderson stated that she couldn't return to her job as an assistant manager at Pizza Hut because she couldn't be on her feet all day long, but thought she could perform a retail sales job or retail management job, as long as she could alternate sitting and standing, didn't have to lift heavy objects, and didn't have to write for continuous periods of time (more than 10-15 minutes).

The ALJ found that Mrs. Anderson's testimony about her limitations was not fully credible. In assessing credibility, she considered the objective medical evidence, Mrs. Anderson's own conflicting statements regarding her limitations and activities, and the limited use of pain medication and the fact that medication significantly reduced the level of pain she experienced. The ALJ found that Mr. Anderson's assertion in a written statement that his wife couldn't lift or carry any weight and Mrs. Anderson's testimony about her physical limitations were inconsistent with the medical evidence, including a 2001 report by her treating physician, Dr. Steven Wynder, that Mrs. Anderson was capable of doing sedentary work, could stand and walk without limitation, could lift and carry up to 40 pounds to waist height with some limitations, and Dr. Wynder's statement in June 2002 that her progress was exceptional. Mrs. Anderson herself testified that she could do a retail job if she could sit and stand at will, and the ALJ included that requirement in her assessment of residual functional capacity.

Although Mrs. Anderson testified that she thought she might have sleep apnea, the ALJ correctly noted that she had not been diagnosed or treated for that condition. She found that Mrs. Anderson's assertion of a need to nap 25 out of 30 days was not consistent with the overall medical evidence and her activities, and that while Mrs. Anderson chose to nap, there was no indication that it was an unavoidable consequence of her impairments. The record supports those findings.

The "disabling extent of a claimant's pain is a question of fact for the ALJ," Kapusta v. Sullivan, 900 F.2d 94, 97 (7th Cir. 1989), and Mrs. Anderson hasn't met her burden of showing the ALJ's assessment to be patently wrong.

CONCLUSION

For these reasons, the court AFFIRMS the decision of the Commissioner of Social Security.

SO ORDERED.

ENTERED:   January 2, 2008

/s/ Robert L. Miller, Jr.
Chief Judge
United States District Court